NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

DEC 13 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JOANNA MAXON, an individual; NATHAN BRITTSAN, an individual, | No. 20-56156 |
| Plaintiffs-Appellants, | D.C. No. 2:19-cv-09969-CBM-MRW |
| v. | |
| FULLER THEOLOGICAL SEMINARY, a California nonprofit corporation; et al., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
Consuelo B. Marshall, District Judge, Presiding

Argued and Submitted November 18, 2021
San Francisco, California

Before: PAEZ, WATFORD, and FRIEDLAND, Circuit Judges.

Plaintiffs-Appellants Joanna Maxon and Nathan Brittsan ("Plaintiffs")

appeal the district court's judgment dismissing without leave to amend their claim

under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681, *et seq*.

("Title IX"), and declining to exercise supplemental jurisdiction over their

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

remaining state-law claims.  We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

**1.**  Plaintiffs argue that the district court erred in dismissing their complaint against Fuller Theological Seminary ("Fuller") because the institution does not fall within Title IX's religious exemption.  We disagree.

Title IX's section prohibiting sex discrimination does "not apply to an educational institution which is controlled by a religious organization if the application of [that prohibition] would not be consistent with the religious tenets of such organization."  20 U.S.C. § 1681(a)(3).  Plaintiffs argue that the exemption does not apply to Fuller because the school is controlled by its own board of trustees rather than by a distinct, external organization.  Although the statute does not define the term "religious organization" or address whether it must be legally separate from the "educational institution" it controls, the ordinary meaning of "organization" is broad enough to encompass an entity that is wholly contained within another entity.  Dictionaries consistently define "organization" to mean "[a] group that has formed for a particular purpose," *Organization*, Black's Law Dictionary (11th ed. 2019), with no requirement that the group be distinct or separate.  *See also Organization*, Oxford English Dictionary (3d ed. 2004) ("[a]n organized body of people with a particular purpose").  While Plaintiffs argue that "[t]he most natural grammatical meaning" of the statutory language is that it

requires "two distinct entities," one to exert control and one to be controlled, they cite to no case law or grammatical rule to explain why we should adopt that interpretation. Indeed, courts and statutes frequently use the phrase "controlled by" to describe the relationship between a board of trustees or directors and an underlying organization. *See, e.g.*, *United States v. Sealy, Inc.*, 388 U.S. 350, 352 (1967); *Name.Space, Inc. v. Internet Corp. for Assigned Names & Nos.*, 795 F.3d 1124, 1128 (9th Cir. 2015); 26 U.S.C. § 501(n)(3)(D).

The Department of Education ("DOE") has long understood the statute to have the same meaning that Fuller asks us to adopt. For over 30 years, DOE has maintained that the statute does not contain "an independent requirement that the controlling religious organization be a separate legal entity than the educational institution." Direct Grant Programs, 85 Fed. Reg. 59,916, 59,956 (Sept. 23, 2020). The agency formalized this interpretation in a rule promulgated in 2020, which said that if an "educational institution is a school or department of divinity," that is "sufficient to establish that [it] is controlled by a religious organization." 34 C.F.R. § 106.12(c). To the extent that the statutory language could be construed in multiple ways, we defer to DOE's longstanding interpretation and conclude that Title IX's religious exemption encompasses educational institutions, including divinity schools like Fuller, that are controlled by their own religiously affiliated boards of trustees. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

**2.** Plaintiffs further argue that Fuller's discriminatory actions toward them do not fall within the religious exemption because it is not clear whether there is a legitimate conflict between the school's religious tenets and Title IX's prohibition on sex discrimination. They contend that this is a question of fact that requires further discovery and should not be resolved on a motion to dismiss.

To the extent that Plaintiffs ask us to second-guess Fuller's interpretation of its own religious tenets, we cannot grant Plaintiffs any relief. *See Mitchell v. Helms*, 530 U.S. 793, 828 (2000). The school's Sexual Standards state that "sexual union must be reserved for marriage, which is the covenant union between one man and one woman" and outline the expectation that all members of the school community "abstain from what it holds to be unbiblical sexual practices." After discovering that Plaintiffs were both in same-sex marriages, Fuller dismissed them for violating this standard. To the extent that Plaintiffs were dismissed because their marriages were with spouses of the same sex, rather than the opposite sex, Plaintiffs' claim fails because the religious exemption applies to shield these religiously motivated decisions that would otherwise violate Title IX's prohibition on sex discrimination. *See Bostock v. Clayton County,* 140 S. Ct. 1731, 1741 (2020) (discussing discrimination on the basis of sexual orientation in the Title VII

4

context).[1]

**3.** Fuller was not required to provide any written notice to DOE to claim the religious exemption. Plaintiffs point to a regulation in place at the time this lawsuit was filed requiring that

> [a]n educational institution which wishes to claim the exemption set forth in paragraph (a) of this section, shall do so by submitting in writing to the Assistant Secretary a statement by the highest ranking official of the institution, identifying the provisions of this part which conflict with a specific tenet of the religious organization.

34 C.F.R. § 106.12(b) (enacted May 9, 1980). Reading the regulation to *require* an advance statement, however, conflicts with the clear language of 20 U.S.C. § 1681(a)(3), DOE's longstanding practice, and the current text of section 106.12(b).

The language of Title IX does not condition an institution's ability to claim the religious exemption on filing written notice or on any other process—the exemption is mandatory and automatic. DOE has long interpreted the version of

---

[1] Plaintiffs also argue that Fuller treated them more harshly because they violated the Sexual Standards policy by being in same-sex marriages as compared to students who violated the Sexual Standards policy by engaging in other forms of prohibited sexual conduct. We need not decide whether that could be a cognizable theory of liability that might fall outside the religious exemption in the absence of a religious tenet Fuller holds that explains the differential treatment. Plaintiffs have advanced nothing more than conclusory assertions that Fuller engages in this sort of differential treatment, and they have conceded that they cannot currently advance any more-specific allegations even if given leave to amend. Plaintiffs' factual allegations therefore do not present us with such a liability theory.

5

section 106.12(b) enacted in May 1980 in line with this language. A memorandum issued by the agency in 1989 specifies that "[t]he regulation does not require that a religious institution submit a written claim of exemption, nor is an institution's exempt status dependent upon its submission of a written statement." U.S. Dep't of Educ., Office for Civil Rights, Memorandum from William L. Smith, Acting Assistant Sec'y for Civil Rights, to OCR Senior Staff regarding Title IX Religious Exemption Procedures 1 (Oct. 11, 1989), https://www2.ed.gov/about/offices/list/ocr/docs/smith-memo-19891011.pdf. Instead, the regulation was intended to offer educational institutions an opportunity to "request . . . assurance" from the agency that they fell within the religious exemption. *Id*.

This conclusion is bolstered by the current text of 34 C.F.R. § 106.12(b). In May 2020, DOE amended the regulation to provide that

> [a]n educational institution that seeks assurance of the exemption set forth in paragraph (a) of this section may do so by submitting in writing to the Assistant Secretary a statement by the highest ranking official of the institution, identifying the provisions of this part that conflict with a specific tenet of the religious organization. An institution is not required to seek assurance from the Assistant Secretary in order to assert such an exemption.

34 C.F.R. § 106.12(b) (enacted May 19, 2020). The agency described this amendment as "bring[ing] § 106.12(b) further in line with the relevant statutory framework in this context," since

> [n]o part of the statute requires that recipients receive an assurance letter

6

from OCR, and no part of the statute suggests that a recipient must be publicly on the record as a religious institution claiming a religious exemption before it may invoke a religious exemption in the context of Title IX.

Nondiscrimination on the Basis of Sex in Education Programs, 85 Fed. Reg. 30,026, 30,475 (May 19, 2020). Given that DOE has never required educational institutions to request the religious exemption in writing and that such a requirement would conflict with the plain language of the statute, Fuller is not barred from claiming the exception because it failed to submit such a request.

**4.** The district court did not err in relying on documents incorporated by reference at the motion to dismiss stage. Plaintiffs admit that the documents were properly incorporated, but they argue that the court should not have relied on them to decide that Fuller's religious tenets conflicted with Title IX. As discussed above, however, to the extent Fuller dismissed Plaintiffs because it found that their same-sex marriages violated the school's Sexual Standards policy, we may not second-guess Fuller's reasonable interpretation of its own religious tenets. *See Mitchell*, 530 U.S. at 828.

**5.** Finally, it was not error for the district court to dismiss Plaintiffs' complaint without leave to amend. "In dismissing for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)

7

(cleaned up). While the district court did not discuss its reasons for denying Plaintiffs leave to amend, it was "readily apparent" from the record that they could allege no additional facts to save their challenge to Fuller's differential treatment of same-sex marriages as compared to opposite-sex marriages, since Fuller's actions fell squarely within Title IX's religious exemption. *Hurn v. Ret. Fund Tr. of Plumbing, Heating & Piping Indus.*, 648 F.2d 1252, 1254 (9th Cir. 1981).[2] Therefore, dismissal with prejudice was proper.

**AFFIRMED.**

---

[2] As explained in footnote 1 above, to the extent Plaintiffs wish to press a theory of liability based on differential treatment of students who violate the Sexual Standards policy in different ways, Plaintiffs have conceded that they cannot allege the sort of additional facts that would be needed to pursue such a theory.